IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MERISSA A. HISH,

                                                    OPINION AND ORDER

                Plaintiff,

                                            12-cv-868-bbc

       v.

CHIQUOINE & MOLBERG, S.C. and
STEPHEN D. CHIQUOINE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Merissa A. Hish has moved for an award of attorney fees and costs in connection with the suit she brought against defendants Chiquoine & Molberg, S.C. and Stephen D. Chiquoine for their violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p.  The parties settled the case, agreeing to a judgment that was entered on October 8, 2013.  They were unable to agree on the attorney fees, litigation expenses and costs incurred on behalf of plaintiff and left that determination to the court.

The parties disagree about almost every aspect of the fee award, with both sides attributing to the other the delay in reaching agreement on the terms of the settlement and thereby increasing the amount of the attorney fees requested by plaintiff.  Defendants maintain that plaintiff is not entitled to any award because she insisted on wording the settlement to allow her to seek an award of fees incurred "on behalf of plaintiff," rather than "by plaintiff."  They argue that no one incurred any fees "on behalf of plaintiff" because she

1

was represented by a public interest law firm.  In addition, defendants take issue with the amount of fees sought by plaintiff, saying that if the court reaches that issue, the fees are out of proportion to those charged by private lawyers doing similar work in the same marketplace.

I conclude that plaintiff is entitled to an award of fees, despite the wording of the settlement.  I conclude also that the fees she is seeking are higher than those charged generally in the Madison area for the kind of work done by her attorneys in this case, that her attorneys are responsible for some of the delay in reaching a final settlement and that as a consequence her fee request will be reduced accordingly.

BACKGROUND

In a complaint filed on November 30, 2012, plaintiff alleged that defendants had violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, by engaging in abusive, deceptive and unfair practices.  Cpt., dkt. #1, at 1.  She asked for actual and statutory damages for defendants' violations of the Act, as well as for their abuse of the supplemental examination and contempt processes, which she contended they used to coerce her into giving up assets otherwise exempt from collection.  Id.

The case arose out of a delinquent lease for the rental of a storage locker.  Plaintiff defaulted on the lease and the owner, represented by defendants, filed a small claims action in Sauk County, Wisconsin.  A default judgment was entered against plaintiff on October 31, 2011.  Shortly afterward, plaintiff received an Order for Financial Disclosure, which she

2

filled out, indicating that she had no income and assets and received food stamps and medical assistance.   Later, defendants scheduled certain supplemental examinations that plaintiff was required to attend and bring along documents.   In March 2012, defendants accused plaintiff of evading service of the examination order, which forced them to incur the costs of publication; plaintiff denies that she evaded service or that she was even on the premises when service was attempted.   She alleged that defendants were trying to intimidate her into paying her debt with exempt income.   Defendants filed a motion for contempt on March 12, 2012, seeking sanctions for plaintiff's failure to appear at the supplemental examination.   Plaintiff appeared for the motion hearing, at which defendants sought sanctions of $300 plus $101.65 in costs; the presiding judge reduced the amount to $150 plus costs.   Defendants scheduled another supplemental examination.

Sometime thereafter, plaintiff secured representation by Legal Action for Wisconsin, which filed a complaint on her behalf on November 30, 2012.   Defendants hired Briane Pagel to represent them.   Pagel called plaintiff's counsel in January 2013 to ask what damages plaintiff was claiming.   Counsel wrote back to say that the complaint gave "information on the category of monetary damages sought and those that would be on the initial disclosure," including actual and statutory damages under the Fair Debt Collection Act."   Pagel responded, saying he was looking for specific damages.   "Can you give me a dollar amount that your client wants?"   Plaintiff's counsel did not provide the information.

On January 28, 2013, Pagel wrote again to say he had some settlement authority and asked plaintiff's counsel for an itemization of plaintiff's claimed damages, costs and fees.

3

Her only response was to say, "If your client would like to make an offer to settle this case, send it to me and I will consult with my client."  The next month, new counsel, Joshua Kopp, began representing defendants.  Kopp called plaintiff's counsel to renew the request to specify the amount of damages plaintiff was claiming.  Counsel said it was not possible to do so because she did not really know what the damages were, but that she would take any offer from defendants to plaintiff for her consideration.

On March 7, 2013, defendants made a settlement offer to plaintiff of $2,000 for a full release of all claims.  (The parties do not say whether this included attorney fees and costs.)  Plaintiff's counsel rejected the offer.  Defendants returned with an offer of $5,000, dkt. #26-1, which counsel said she could not accept but countered with a proposal for $14,052.37 for a full release, some of which plaintiff would use to pay the state court judgment against her if defendants would have the judgment vacated subsequently.  Id. Kopp wrote back on March 15, 2013 to ask for documentation substantiating the fees and costs that made up the $14,052.37 request.  On April 5, plaintiff's counsel wrote back to say she would not provide the documentation.  Defendants made a final offer on May 28, 2012 that plaintiff accepted on June 7, providing for entry of judgment in favor of plaintiff for $5000 in damages, with a potential recovery of attorney fees.  Defendants' proposed settlement included provision for "attorneys' fees, litigation expenses and costs of suit incurred by the plaintiff."  Plaintiff's counsel proposed that this phrase be modified to read: attorneys' fees, litigation expenses and costs of suit incurred *on behalf of* the plaintiff." Defendants agreed to the modification.

4

OPINION

A. Plaintiff's Entitlement to an Attorney Fee Award

At the outset, it is necessary to decide whether defendants are correct in arguing that by asking for fees, costs, etc. incurred "on behalf of" plaintiff rather than "by plaintiff," plaintiff gave up any claim to a fee award.  They argue that under the ordinary principles of contract law, the court must read the settlement agreement as referring only to fees incurred by some entity other than plaintiff for the benefit of plaintiff and that, because plaintiff has not shown that Legal Action became liable for any attorney fees on her behalf, neither she nor the organization can recover any fees.

Defendants' reading of the contract language is not wholly meritless.  After all, it was plaintiff's counsel that asked for the particular language to insure that her employer, Legal Action, would receive reimbursement for the costs it had incurred on plaintiff's behalf.  Apparently, counsel was afraid that if the agreement provided for repayment of expenses incurred "by plaintiff," rather than "on behalf of plaintiff," it would be read as not requiring defendants to pay for any expenses incurred by Legal Action on plaintiff's behalf.  It is not surprising that defendants read this tactic as a possible means to avoid paying attorney fees to plaintiff (to be passed on to Legal Action).  But both sides are reading too much into the language.  Whether fees and costs are "incurred by" a plaintiff or "incurred on behalf of" a plaintiff is immaterial.  The cases are legion in which insurance companies, United States v. Thouvenot, Wade & Moerschen, Inc., 596 F.3d 378 (7th Cir. 2010), employee unions, Devine v. National Treasury Employees' Union, 805 F.2d 375, 384 (Fed. Cir. 1986), and

5

legal services organizations, <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984), are reimbursed for attorney fees and expenses incurred "by a plaintiff," even when it is obvious that the plaintiff never incurred them personally, either because of her insurance coverage or because she was represented by a union or a legal services organization.  Why that would change if the wording were "incurred by" or "incurred on behalf of" is left unexplained by defendants, or by plaintiff, for that matter.

Defendants say only that "to incur means to become liable or subject to," which is true but does not explain why courts have been willing to award attorney fees to plaintiffs in cases like this one, brought to vindicate statutory or constitutional rights, even when it is clear that the plaintiffs never incurred any personal liability for the fees, either  because they were represented by an organization such as Legal Action, an employee union or an insurance company.  Plaintiff's counsel thought it was crucial to the settlement agreement to use the term "incurred on behalf of," but she never explains in her briefing why she thought this; rather, she explains in great detail why she thinks attorney fees are *incurred by* the party even when the party is represented by a non-profit firm or her fees are guaranteed by her insurer or union, even though this is not the issue defendants are asserting.  Plt.'s reply br., dkt. #28, at 5.

Nevertheless, I agree with plaintiff that Legal Action is entitled to attorney fees, as well as costs.  Although the organization does not "incur" attorney fees on its own behalf or on behalf of its clients, it incurs costs for the time its lawyers expend in representing clients. To say that it does not incur fees on behalf of the few persons it can represent ignores the

reality of its situation.  It must assess the value of the cases it takes, just like any lawyer in private practice.  It cannot take too many cases that are unlikely to yield attorney fees, even if it has other sources of funding; it has expenses that must be met.  Rodriguez v. Taylor, 569 F.2d 1231, 1245 (3d Cir. 1977) ("Legal services organizations often must ration their limited financial and manpower resources.").   Moreover, in this case, Legal Action was potentially liable for attorney fees on behalf of plaintiff in the sense that if she did not prevail, it would have to find other means of paying not only for the costs it incurred in prosecuting her claims but possibly for the costs and fees defendants incurred in defending against those claims.

It is well understood that awards of attorney fees may be made to legal services organizations under the Equal Access to Justice Act, 28 U.S.C. § 2412, Blum v. Stenson, 465 U.S. 886 (1984), and also under other Acts.  E.g., New York Gaslight Club, Inc. v. Carey, 447 U.S. 54, 70 n.9 (1980) (pro bono awards available under 42 U.S.C. § 2000e(5)(k)); McLean v. Arkansas Board of Education, 723 F.2d 45 at 47 (8th Cir. 1983) (specific fundraising for expenses to challenge constitutionality of creationism law did not bar legal services organization from attorney fee award) (citing Oldham v. Ehrlich, 617 F.2d 163, 168 (8th Cir. 1980) (pro bono awards available under 42 U.S.C. § 1988; defendant should not benefit by "fortuity that the plaintiff could not afford private counsel"); Crooker v. United States Dept. of Treasury, 634 F.2d 48, 49 n.1 (2d Cir. 1980) (pro bono awards available under Freedom of Information Act); Rodriquez, 569 F.2d at 1244 (3d Cir. 1977) (pro bono awards available under Age Discrimination in Employment Act).  Defendants have shown

no reason why this same holding would not apply to awards of attorney fees under 15 U.S.C. § 1692k, simply because the settlement agreement sought attorney fees incurred "on behalf of plaintiff."

## B. Reasonableness of Fee Request

### 1. Reasonableness of hours worked

Defendants challenge plaintiff's fee request on two grounds: the number of hours claimed and the rates sought for fees to individual lawyers who worked on the case. As to hours, defendants maintain that this number is inflated by plaintiff's counsel's refusal to give defendants an estimate of the damages that plaintiff was seeking. Plaintiff does not respond to this particular criticism but does assert that her refusal to accept the first proposals offered by defendants was a significant factor in the eventual settlement that ended the case. She is right about this, but I find that her refusal to give defendants any estimate of plaintiff's damages was a factor in the length of the deliberations. Accordingly, I will reduce her fee request by five hours to account for her part in delaying the eventual settlement of the case.

### 2. Reasonableness of attorney fees

Plaintiff has asked for more than $24,000 in attorney fees for a case in which the only contested issue was the settlement amount. She contends that the fees are reasonable because the rates charged by the different lawyers who worked on the case are "market rates" for legal services lawyers of the same experience, skill and reputation as hers and because of

8

the novelty of the claim, as well as the defendants' resistence to it.  She has filed affidavits from two lawyers that support her request for fees of $275 an hour for her work, $400 an hour for work done by Jeffery Myer and $300 an hour for work by Kevin Magee.  Kenneth Axe, a partner in the firm representing defendants, has filed an affidavit in which he avers that his usual hourly rate is between $225 and $330 an hour.

I find unconvincing the affidavits filed by the two lawyers supporting an hourly rate of $400 an hour for consumer law representation.  Although the two lawyers are experienced and effective, my own experience in approving vouchers in this area persuades me that hourly fees of $400 an hour for consumer law cases are high for the Madison, Wisconsin legal community.  In light of Stacia Conneely's seven plus years of experience in consumer law and the litigating history spelled out in her affidavit, dkt. #18-1, I find that an hourly fee of $250 is proper for her work.  Given the additional years of experience of Jeffery Myer and Kevin Magee and the limited nature of their work in this case, an hourly rate of $300 is appropriate.

## 3. Hours to be compensated

In addition to the deduction of five hours from the number of hours plaintiff's counsel is seeking compensation, I will deduct 7.1 hours from her fee claim time, representing the time spent before November 1, 2012.  When plaintiff's counsel submitted her initial claim for attorney fees to defendants in June 2013, she included no time spent prior to November 1 of the year before.  In their brief in opposition to plaintiff's fee request, defendants say that most of this time was spent drafting the complaint in this case, which was based in large part

on the pleadings she filed in the state court action.  Plaintiff did not respond to this assertion in her reply brief so I will treat it as unopposed and delete the pre-November 2012 hours from her request.  Deducting 12.1 hours from the 76.12 sought by Conneely leaves 64.02 hours. At a rate of $250, the award for Conneely's work is $16,005.  Plaintiff is awarded an additional $720 for the work done by Kevin Magee and $1560 for work done by Jeffery Myers, for a total award of $18,285, together with costs of $555.60.


## ORDER

IT IS ORDERED that plaintiff Merissa A. Hish's motion for an award of attorney fees, dkt. #14, is GRANTED and she is awarded attorney fees of $18,285; her motion for an award of costs, dkt. #21, is GRANTED as well, and she is granted costs of $555.60, as the prevailing party in this case brought under the Fair Debt Collection Practices Act.

Entered this 3d day of January, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge